**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JUSTIN R. HARRIS,                  :
                                   :    Civil Action No. 05-323 (RBK)
          Petitioner,              :
                                   :
          v.                       :    **OPINION**
                                   :
FEDERAL BUREAU OF PRISONS,         :
et al.,                            :
                                   :
          Respondents.             :


**APPEARANCES:**

>      JUSTIN R. HARRIS, Petitioner <u>pro se</u>
>      #39066-004
>      F.C.I. Fort Dix
>      P.O. Box 7000/West
>      Fort Dix, New Jersey 08640
>
>      CHRISTOPHER J. CHRISTIE, U.S. Attorney
>      IRENE E. DOWDY, AUSA
>      402 East State Street, Room 430
>      Trenton, New Jersey 08608
>      Attorneys for Respondents

**KUGLER**, District Judge

Petitioner Justin R. Harris, a federal prisoner currently confined at the Federal Correctional Institution ("F.C.I.") at Fort Dix, New Jersey, has submitted a petition for a writ of mandamus pursuant to 28 U.S.C. § 1361, challenging the legality of a policy change implemented by the United States Bureau of Prisons ("BOP") in December 2002, which was used to determine his eligibility date for pre-release custody.  The Respondents filed a motion to dismiss the petition without prejudice, because the

December 2002 policy has been superceded by new BOP regulations, effective February 14, 2005, thus making the initial action moot. Petitioner opposed the motion to dismiss, and amended his writ to include objections to the new rule change that became effective in February 2005.  Petitioner continues to seek placement in a CCC for a full six months before his projected release date of August 22, 2006.

Having thoroughly reviewed the submissions by the parties, and for the reasons as discussed below, this Court finds that the new BOP regulations are valid, and the petition for a writ of habeas corpus will be denied.

## I.  BACKGROUND

Petitioner, Justin R. Harris ("Harris"), is currently serving a prison sentence of 46 months, with four years supervised release to follow, as imposed by the United States District Court for the Southern District of Florida on September 11, 2003, for bank robbery with a dangerous weapon in violation of 18 U.S.C. § 2113(a), (d).  Harris' projected date for release from BOP custody is August 22, 2006, assuming he has earned his Good Conduct Time credits ("GCT") pursuant to 18 U.S.C. § 3624(b). (Respondents' Answer, Declaration of Michael Carroll ("Carroll Decl.") at ¶ 4 with attached SENTRY Sentence Monitoring Computation Data sheets.

2

Harris alleges that Respondents have calculated his "pre-release preparation" or "Six Month/10% Date" to be April 24, 2006, the earliest date he would be eligible for release to a Community Correction Center ("CCC"). Harris contends that the Respondents' assigned date for his CCC placement is incorrect, in that it misinterprets § 3624, pursuant to a memorandum from the Office of Legal Counsel in the Department of Justice ("OLC memorandum"), effective December 20, 2002. Based on the OLC memorandum, the BOP implemented a policy of limiting designations to a CCC to the lesser of the last 10% of the sentence or six months. Harris also argues, in amendments filed on April 13, 2005 and May 11, 2005, that the new BOP regulations, found at 28 C.F.R.§§ 570.20 and 570.21, illegally constrains the BOP's discretion to place Harris in a CCC for transitional purposes for more than 10% of his sentence. He seeks the full six months CCC placement. Thus, accounting for anticipated good conduct time, Harris contends that he is eligible for transitional placement 180 days (six months) before completing his sentence, or on February 23, 2006.

On April 11, 2005, after receiving leave from this Court, the Government filed a motion to dismiss the petition without prejudice. Respondents contend that the petition is moot because it does not address the newly effective regulations governing CCC designations, 28 C.F.R. §§ 570.20, 570.21. Respondents also

argue that the new regulations reflect the BOP's categorical exercise of discretion under 18 U.S.C. § 3621(b) to designate inmates to CCCs during the first 90% of their sentences.

## DISCUSSION

### A.   Jurisdiction

Harris characterizes his action as a writ of mandamus under 28 U.S.C. § 1361.  The Court finds that Harris is not entitled to issuance of a writ of mandamus under 28 U.S.C. § 1361.  To be eligible for mandamus relief, a petitioner must establish (1) that he has a clear right to relief, (2) that the respondent's duty to perform the act in question is plainly defined and peremptory, and (3) that he has no other adequate remedy.  See Rios v. Ziglar, 398 F.3d 1201 (10th Cir. 2005).  See also Cheney v. U.S. Dist. Court for the Dist. Of Columbia, 542 U.S. 367, 124 S. Ct. 2576, 2593-94 (2004)("Mandamus is an extraordinary remedy, available to 'a plaintiff only if ... the defendant owes him a clear, non-discretionary duty.'")(citing Heckler v. Ringer, 466 U.S. 602 (1984)).  Harris has not established any of these requirements.  As set forth in this Opinion, infra, the respondent's duty in this instance is discretionary, not peremptory.  Moreover, Harris has adequate access to relief via a petition for habeas relief under § 2241.  Therefore, the writ of mandamus is denied, and the Court will construe Harris' action as

a petition for a writ of habeas corpus pursuant to 28 U.S.C. §
2241.

Section 2241 of Title 28 of the United States Code provides,
in relevant part:

> (a)  Writs of habeas corpus may be granted by the
> Supreme Court, any justice thereof, the district courts
> and any circuit judge within their respective jurisdictions . . .
>
> (c)  The writ of habeas corpus shall not extend to a
> prisoner unless . . .(3) he is in custody in violation
> of the Constitution or laws or treaties of the United
> States.

28 U.S.C. § 2241(a), (c)(3).

Thus, the Court has subject matter jurisdiction over this
matter pursuant to 28 U.S.C. § 2241(a) and (c) in that petitioner
challenges his custody in this district under the authority of
the United States and in violation of the laws of the United
States.  See United States v. Ferri, 686 F.2d 147, 158 (3d Cir.
1982), cert. denied, 459 U.S. 1211 (1983)(claims attacking the
execution of a petitioner's sentence are properly brought under
28 U.S.C. § 2241).  See also Kingsley v. Bureau of Prisons, 937
F.2d 26, 30 (2d Cir. 1991)("challenges to the length,
appropriateness or conditions of confinement are properly brought
under 28 U.S.C. § 2241").

Indeed, "Section 2241 of title 28 has long been recognized
as the basis for challenging the execution of the sentence of a
person in federal custody or a person sentenced for violating a

federal criminal statute." <u>Zucker v. Menifee</u>, 2004 WL 102779, *3
(S.D.N.Y. January 21, 2004)(citing <u>Maleng v. Cook</u>, 490 U.S. 488,
493 (1989)(per curiam)).  Additionally, this Court has the
authority to compel the BOP to exercise its authority to select
and designate a place for service of sentence.  <u>See McCarthy v.
Doe</u>, 146 F.3d 118 (2d Cir. 1998).  Habeas corpus relief under 28
U.S.C. § 2241 is available to effectuate this authority to the
extent that the prisoner is in any form of "custody" in this
district.  <u>See Hensley v. Municipal Court</u>, 411 U.S. 345 (1973).

**B.**   <u>**Exhaustion**</u>

Harris argues extensively in his initial petition that his
admitted failure to exhaust administrative remedies should be
excused as futile.  The Government does not address this claim,
and therefore, any defense asserting failure to exhaust
administrative remedies will be deemed as waived.

Nevertheless, even if the Government has not waived its
defense that Harris failed to exhaust his administrative
remedies, the Court would find the non-exhaustion excused.
Although 28 U.S.C. § 2241 contains no statutory exhaustion
requirement, a federal prisoner ordinarily may not bring a
petition for writ of habeas corpus under 28 U.S.C. § 2241,
challenging the execution of his sentence, until he has exhausted
all available administrative remedies.  <u>See</u>, <u>e.g.</u>, <u>Callwood v.
Enos</u>, 230 F.3d 627, 634 (3d Cir. 2000); <u>Arias v. United States</u>

6

Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v.
Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion
doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a
> factual record and apply its expertise facilitates
> judicial review; (2) permitting agencies to grant the
> relief requested conserves judicial resources; and (3)
> providing agencies the opportunity to correct their own
> errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd,
248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau
of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless,
exhaustion of administrative remedies is not required where
exhaustion would not promote these goals.  See, e.g., Gambino v.
Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required
where petitioner demonstrates futility); Lyons v. U.S. Marshals,
840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where
it "would be futile, if the actions of the agency clearly and
unambiguously violate statutory or constitutional rights, or if
the administrative procedure is clearly shown to be inadequate to
prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959,
*2 (E.D. Pa. 2000) (exhaustion not required where delay would
subject petitioner to "irreparable injury").

Here, it does not appear that there is any need to develop a
factual record.  Nor does this matter require application of the
agency's particular expertise.  Harris does not challenge the
application of the BOP's ten-percent rule to him, but challenges

whether the ten-percent rule legally implements the statute pursuant to which it was promulgated.  This is a question within the expertise of courts.  See Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 n.9 (1984) ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.").  Accordingly, the purposes of the exhaustion requirement would not be served by requiring Harris to exhaust his administrative remedies.

Indeed, most courts have declined to dismiss challenges to the BOP's CCC placement policy on exhaustion grounds.  See, e.g., Colton v. Ashcroft, 299 F. Supp.2d 681, 688-90 (E.D. Ky. 2004)(exhaustion not required because BOP has demonstrated unwillingness to reconsider new policy); Howard v. Ashcroft, 248 F. Supp.2d 518, 534 (M.D. La. 2003)(administrative delay may moot court challenge, and thus administrative remedies are not available); Monahan v. Winn, 276 F. Supp.2d 196, 204-05 (D. Mass. 2003)(declining to require exhaustion of claim challenging BOP's new policy).

Further, in Ferrante v. Bureau of Prisons, the court found that if the petitioner's claim were meritorious, he would be released to a halfway house relatively soon; therefore, dismissing the petition for lack of exhaustion would be futile. See 990 F. Supp. 367, 370 (D.N.J. 1998); see also Fraley v.

Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1993)(stating that exhaustion was not required because it was futile, as Regional Director would "almost certainly" have denied request, and term of imprisonment was completed).

Therefore, in this case, the Court will excuse the exhaustion requirement, as it would be futile to require petitioner to administratively exhaust these claims respecting the BOP's CCC designation policies.

C.   **The Statutory Language and BOP Policy**

       Harris argues that he is entitled to consideration for CCC placement before the strict 10% limitation as newly imposed by the respondents pursuant to a change in BOP policy in December 2002, and the new BOP regulations, 28 C.F.R. §§ 570.20, 570.21, effective February 14, 2005.

       Under federal law, the BOP is authorized to designate the place of imprisonment of federal prisoners.

> (a) Commitment to Custody of Bureau of Prisons. - A person who has been sentenced to a term of imprisonment ... shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624.
>
> (b) Place of imprisonment. - The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise ... that the Bureau determines to be appropriate and suitable ... .  The Bureau may at any

time ... direct the transfer of a prisoner from one
penal or correctional facility to another.

18 U.S.C. § 3621(b).

Federal law provides for prisoners to serve the last portion

of their imprisonment under conditions that will facilitate their

transition from prison life to the community.[1]

> (c) Pre-release custody. - The Bureau of Prisons,
> shall, to the extent practicable, assure that a
> prisoner serving a term of imprisonment spends a
> reasonable part, not to exceed six months, of the last
> 10 per centum of the term to be served under conditions
> that will afford the prisoner a reasonable opportunity
> to adjust to and prepare for the prisoner's re-entry
> into the community.  The authority provided by this
> subsection may be used to place a prisoner in home
> confinement.  The United States Probation System shall,
> to the extent practicable, offer assistance to a
> prisoner during such pre-release custody.

18 U.S.C. § 3624(c).

On December 13, 2002, the Office of Legal Counsel of the

United States Department of Justice prepared a Memorandum Opinion

---

[1]    In implementing pre-release custody programming under
this statute, the BOP uses a variety of community-based programs,
including CCCs, Comprehensive Sanctions Centers ("CSCs"), the
Mothers and Infants Together ("MINT") program, and Intensive
Confinement Centers ("ICCs"), as well as home confinement.  BOP
Program Statement ("PS") 7310.04, Community Corrections Center
(CCC) Utilization and Transfer Procedure (Dec. 16, 1999),
provides guidance to BOP staff as to the administration of pre-
release programs generally.  Not all federal inmates are eligible
for participation in pre-release community-based programs
(including home confinement) at the end of their sentences.  For
example, those inmates with unresolved pending charges or
detainers, those designated as deportable aliens, and those
needing in-patient medical care, ordinarily are ineligible for
participation.  PS 7310.04 Section 10.

for Deputy Attorney General Larry D. Thompson on the question "whether the BOP has general authority, either upon the recommendation of the sentencing judge or otherwise, to place [a federal offender whom the BOP deems to be low-risk and nonviolent and who has received a short sentence of imprisonment] directly in community confinement at the outset of his sentence or to transfer him from prison to community confinement during the course of his sentence."

The Office of Legal Counsel ("OLC") began its analysis with a review of Federal Sentencing Guidelines provisions addressing imprisonment and community confinement and federal court opinions concluding that community confinement does not constitute "imprisonment" for purposes of these Sentencing Guidelines provisions.  The OLC progressed from this analysis to a determination that a CCC can not constitute a "penal or correctional facility" that may serve as a place of imprisonment within the meaning of § 3621(b).  If a CCC were considered a place of imprisonment within the meaning of § 3621(b), the OLC reasoned, "then the time limitation in section 3624(c) on BOP authority to transfer a prisoner to a non-prison site – i.e., for a period, not to exceed six months, of the last 10% of the term of his sentence – would be rendered null with respect to community confinement."  The OLC concluded that the practice, pursuant to the BOP's interpretation of § 3621(b), of placing

11

certain prisoners in CCC for a period longer than that mandated by the specific language of § 3624(c) was not lawful.

Based upon this OLC Memorandum Opinion, on December 16, 2002, Deputy Attorney General Larry D. Thompson sent a Memorandum to BOP Director Kathleen Hawk Sawyer advising her the that BOP's prior interpretation of § 3621(b) as including CCCs is unlawful and directing the BOP to cease placement of federal prisoners in CCCs except for the lesser of six months or ten percent of the sentence imposed on the offender.

On December 20, 2002, the BOP adopted the OLC legal opinion in a memorandum mandating that "Pre-release programming CCC designations are limited in duration to the last 10% of the prison sentence, not to exceed six months."[2]  This "ten-percent rule" represented a reversal of long-standing BOP policy to consider prisoners for pre-release CCC placement for up to the final six months of their sentences (the "six-months rule"), regardless of the total term of imprisonment.[3]  See, e.g., Schorr

_____

[2]  There are two exceptions to the "lesser of 10%/6 months" duration of pre-release CCC designation, one for inmates completing an ICC program, the other for inmates completing the Residential Drug Abuse Program.

[3]  This directive marked a change in the BOP's practice as to the duration of its designation of inmates to CCCs for the final pre-release custody portion of their sentences under § 3624(c).  The BOP's December 16, 1998 Program Statement 7310.04, CCC Utilization and Transfer Procedure, Section 5, "Statutory Authority," cited 18 U.S.C. § 3624(c) and 18 U.S.C. § 3621(b), and stated that a "CCC meets the definition of penal or correctional facility" under § 3621(b).  That Program Statement

v. Menifee, 2004 WL 1320898, *2 (S.D.N.Y. June 14, 2004) (and
cases cited therein).  The new ten-percent rule was instituted
without notice to the public and is not reflected in any BOP
Program Statement.  The new ten-percent rule thereafter generated
a wave of litigation from federal prisoners seeking its
invalidation on various grounds.  Id. at *3 (collecting cases).

A majority of district courts have ruled that the December
2002 BOP policy is unlawful because it is based on an unlawful
interpretation of the governing statutes, since it fails to
recognize that 18 U.S.C. § 3621(b) gave the BOP discretion to
place federal inmates in CCCs at any time during their prison
term.  See Wiesel v. Menifee, No. 04 Civ. 9681, 2005 WL 1036297
(S.D.N.Y. May 2, 2005).  In Cestaro, et al. V. DeRosa, et al.,
Civil No. 04-792 (RBK), this Court likewise found that the new

_____

further stated:

> Therefore, the Bureau is not restricted by § 3624(c) in
> designating a CCC for an inmate and may place an inmate
> in a CCC for more than the "last ten per centum of the
> term," or more than six months, if appropriate.
>
> Section 3624(c), however, does restrict the Bureau in
> placing inmates on home confinement to the last six
> months or 10% of the sentence, whichever is less.

Thus, the December 2002 OLC memorandum marked a change in
the BOP's interpretation of authority to designate inmates to
CCCs for pre-release purposes.  The BOP now limits the duration
of pre-release designations to CCCs to a reasonable portion of
the last ten per cent of the sentence, and that portion is not to
exceed six months.

BOP policy, based on the December 2002 OLC memorandum, which
strictly limits an inmate's CCC designation to the last 10% of
his sentence, illegally constrains the BOP's discretion, under §
3621(b), to designate a CCC as the place of an inmate's
imprisonment.  The BOP was directed to reconsider Cestaro's CCC
designation pursuant to the BOP's CCC designation policies in
place before the December 2002 policy change.

Only two circuit courts to date have addressed the merits of
December 2002 policy change, and both have invalidated the new
policy on the ground that the BOP's interpretation of the
statutes is erroneous.  See Elwood v. Jeter, 386 F.3d 842, 846-47
(8th Cir. 2004)(holding that the BOP had discretion to transfer
inmates to community confinement at any time during their
incarceration); Goldings v. Winn, 383 F.3d 17, 23-27 (1st Cir.
2004)(holding that § 3624(c) does not prohibit the BOP from
transferring prisoners to a CCC before the last 10% of their
prison terms, and that § 3621(b) confers the discretionary
authority upon the BOP to execute such transfers).

Recently, in a non-precedential opinion, the Third Circuit
ruled that the December 2002 policy is contrary to the plain
language of § 3624(c).  The Third Circuit substantially agreed
with the interpretations rendered by the First and Eighth
Circuits.  See Miller v. Federal Bureau of Prisons, Case No. 05-
1654 (3d Cir., Sep. 16, 2005).  The court noted but did not

14

express an opinion with respect to the validity of the new
February 2005 regulations.

Shortly after this petition was filed in January 2005, the
BOP finalized an amendment to 28 C.F.R. Part 570.[4]  Effective
February 14, 2005, 28 C.F.R. § 570.20 provides:

> (a) This subpart provides the Bureau of Prisons' (Bureau)
> categorical exercise of discretion for designating inmates
> to community confinement.  The Bureau designates inmates to
> community confinement only as part of pre-release custody
> and programming which will afford the prisoner a reasonable
> opportunity to adjust to and prepare for re-entry into the
> community.
> (b) As discussed in this subpart, the term "community
> confinement" includes Community Corrections Centers
> (CCC)(also known as "halfway houses") and home confinement.

A companion rule, 28 C.F.R. § 570.21, provides:

> (a) The Bureau will designate inmates to community
> confinement only as part of pre-release custody and
> programming, during the last ten percent of the prison
> sentence being served, not to exceed six months.  (b) We may
> exceed these time-frames only when specific Bureau programs

---

[4]  In response to the spate of litigation engendered by the
December 2002 policy change, and the successful challenges to the
policy change, the BOP proposed regulations governing the
designation of inmates to CCCs.  See Community Confinement, 69
Fed.Reg. 51,213 (Aug. 18, 2004).  The BOP stated, "Because
various courts have held that the Bureau has discretion under 18
U.S.C. § 3621(b) to place offenders sentenced to a term of
imprisonment in CCCs, the Bureau considers it prudent to
determine how to exercise such discretion." Id. at 51,213.  The
proposed rule states that the BOP would "exercise its discretion
categorically to limit inmates' community confinement to the last
ten percent of the prison sentence being served, not to exceed
six months." Id.  After a period for notice to and comments from
the public, the BOP published the final rule on January 10, 2005.
See Community Confinement, 70 Fed.Reg 1659 (Jan. 10,
2005)(codified at 28 C.F.R. §§ 570.20-.21).  The policy
thereafter became effective on February 14, 2005.  See id. at
1669.

allow greater periods of community confinement, as provided
by separate statutory authority (for example, residential
substance abuse treatment program (18 U.S.C. §
3621(e)(2)(A)), or shock incarceration program (18 U.S.C. §
4046(c))).

Respondents contend that the new BOP regulations allow for a
permissible categorical exercise of discretion, under 18 U.S.C. §
3621(b), for designating federal prisoners to CCCs.  Thus, the
new regulations would, as a matter of policy, limit an inmate's
CCC placement eligibility to the last 10% of the prison sentence
being served, not to exceed six months.

**D.   The "Ripeness" Issue**

Although the respondents are cognizant of this Court's prior
decision in Cestaro and Comyns, upon which petitioner relies,
they ask that the Court reconsider this case on the ground that
it is not yet ripe for judicial action.  Respondents principally
rely on the argument that petitioner's program review for CCC
eligibility at the end of his sentence has not yet occurred.
Respondents also contend that the new BOP regulations, which are
now effective post February 14, 2005, govern review of
petitioner's CCC designation.

BOP Program Statement 7310.04 ¶ 8.c provides that a specific
"pre-release preparation" plan, including CCC eligibility, is
typically established at a team meeting no later than 11 to 13
months before an inmate's projected release date.  In this case,
Harris's projected release date is August 22, 2006, currently 12

16

months from now.  However, it is plain from this Court's review of petitioner's SENTRY Public Information Data that his "pre-release preparation" date has been established at April 24, 2006.

The data provided by both petitioner and respondents show a "pre-release preparation date" of April 24, 2006; however, there is no date provided for Harris' "Six Month/10% Date".  The Court is not convinced that this discrepancy is significant.  Clearly, the BOP already has evaluated or considered Harris's pre-release custody if it has assigned a pre-release preparation date.  The April 24, 2006 date is long after the "typical" 11 to 13 month review prior to the petitioner's projected release date of August 22, 2006.  Thus, the Court is constrained to conclude that the pre-release preparation date is consistent with the BOP's determination of an inmate's eligibility for CCC placement.  Accordingly, it appears that a CCC placement determination had already been made pursuant to a strict 10% limitation under the December 2002 policy.

Therefore, the Court rejects respondents' contention that this matter is not ripe for consideration.  In addition, the case is not rendered moot by the February 2005 regulations.  Rather, only petitioner's claim challenging the application of the December 2002 Policy to his requested transfer to a CCC six months before his projected release date is moot.  The February 2005 Policy supercedes the December 2002 Policy; thus, Harris

17

cannot assert that the application of the December 2002 Policy to his transfer request is affecting his rights.  See Princeton University v. Schmid, 455 U.S. 100, 103 (1982)(per curiam)(holding that where a challenged regulation is superceded by a new regulation, "the issue of the validity of the old regulation is moot, for this case has 'lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract questions of law.'")(quoting Hall v. Beals, 396 U.S. 45, 48 (1969)(per curiam)).  Nevertheless, Harris has amended his petition to include a challenge to the February 2005 regulations.  Therefore, the case is not moot, and the Court will consider the validity of the new regulations.

**E.   Invalidity of the February 2005 Regulations**

    1.  *The New Regulations Are Entitled to Heightened Deference*

Preliminarily, this Court must determine the level of deference to be accorded the new BOP regulations.  An agency's rules are entitled to a level of deference measured under one of two standards.  First, a heightened deference is reserved for legislative rules that an agency issues within the scope of authority granted to it by Congress.  See United States v. Mead Corp., 533 U.S. 218, 227 (2001); Chevron, 467 U.S. at 842-43 n.9 (where "Congress has directly spoken to the precise question at issue," so that the "intent of Congress is clear," both courts

and administrative agencies are bound by Congress's command).
These rules are typically promulgated only after a notice and
comment period.  Mead, 533 U.S. at 227.  Lesser deference is
accorded to interpretive rules, which, although entitled to
respect, will be supported only if persuasive.  Id. at 232; see
also Chevron, 467 U.S. at 843-45 (where the statutory language is
silent or ambiguous on the specific issue, deference is accorded
the agency's interpretation so long as it is based on a
permissive construction of the statute).  Here, the new BOP
regulations, which became effective on February 14, 2005, are
entitled to a heightened level of deference.[5]  However, the
ultimate determination of the meaning of a statute is for the
courts to resolve.  Downey v. Crabtree, 100 F.3d 662, 666 (9th
Cir. 1996).  For the reasons stated below, the Court concludes
that the new regulations are valid and constitute a permissive
construction of the relevant statutes, 18 U.S.C. §§ 3621(b) and
3624(c).

---

[5]  The new regulation or February 2005 policy was
promulgated in compliance with the notice and comment rulemaking
procedures required by the Administrative Procedure Act ("APA").
See Proposed Rule, 69 Fed.Reg. At 51,213 (giving notice of and
requesting comments on the proposed rule); February 2005 Policy,
70 Fed.Reg. At 1659 (responding to comments on the proposed rule
and adopting final rule); see also Moss v. Apker, 376 F. Supp.2d
416 (S.D.N.Y. 2005)(finding implementation of February 2005
Policy in compliance with APA procedures); Levine v. Menifee, 05
Civ.1902 (RCC), 2005 WL 1384021 (S.D.N.Y. June 9, 2005)(same);
Pimentel v. Gonzalez, 367 F. Supp.2d 365, 372 (S.D.N.Y. 2005).

2.  *The New BOP Policy Reasonably Interprets § 3621(b)*

Because the February 2005 policy supercedes the December 2002 policy with respect to the determination of Harris' CCC placement date, this Court must examine whether the February 2005 policy violates federal constitutional and statutory law as alleged by petitioner with respect to the BOP's categorical decision to limit Harris' CCC transfer to 10% of his sentence as opposed to the full six months.  In essence, Harris contends that the BOP's policy is in conflict with the express mandate of 18 U.S.C. § 3621(b), which plainly gives the BOP the discretion to transfer an inmate to a CCC at anytime during his prison term.

Initially, the Court observes a growing split of authority in the federal district courts about the validity of the February 2005 rule.  Some courts have invalidated the new regulation on the ground that it disregards the factors set forth in § 3621(b), and therefore suffers from the same infirmities as the December 2002 policy.  See, e.g., Baker v. Willingham, No.3:04CV1923(PCD), 2005 WL 2276040 (D.Conn. Sep. 19, 2005); Wiederhorn v. Gonzales, No. 05-360, 2005 WL 1113833 (D.Or. May 9, 2005); Pimentel v. Gonzalez, 367 F. Supp.2d 365 (E.D.N.Y. 2005); Paige v. United States, 369 F. Supp.2d 1257 (D. Mont. 2005); Cook v. Gonzales, No. 05-09, 2005 WL 773956 (D.Or. April 5, 2005); Drew v. Menifee, No. 04-9944, 2005 WL 525449 (S.D.N.Y. Mar. 4, 2005).  But a fairly equal number of courts have ruled to the contrary,

concluding that the February 2005 policy reasonably interprets the enabling statute, § 3621(b), and therefore, is valid.[6]  See Charboneau v. Menifee, 05 Civ. 1900(MSM), 2005 WL 2385862 (S.D.N.Y. Sep. 28, 2005); Lee v. United States, No.Civ.A. 04-0610-CG-C, 2005 WL 2179796 (S.D.Ala. Sep. 6, 2005); Hurley v. Sherrod, No.Civ.A.05CV0117LTBPAC, 2005 WL 2141490 (D.Colo. Sep. 1, 2005); Troy v. Apker, 05 Civ. 1306 (GEL), 2005 WL 1661101 (S.D.N.Y. June 30, 2005)(finding that the BOP has the authority to categorically exercise its discretion regarding CCC transfers and upholding the validity of the February 2005 rule); Moss, 376 F. Supp.2d 416 (same); Yip, 363 F. Supp.2d 548 (same); Levine v. Menifee, 05 Civ. 1902 (RCC), 2005 WL 1384021 (S.D.N.Y. June 9, 2005)(same); Levine v. Apker, 05 CV 3472 (CLB), 2005 WL 1417134 (S.D.N.Y. May 20, 2005)(finding "no Constitutional infirmity in the exercise of categorical discretion under the circumstances where the statute calls for individualized consideration").  See also Wiesel v. Menifee, No. 04 Civ. 9681(DAB), 2005 WL 1036297 (S.D.N.Y. May 2, 2005)(upholding the February 2005 regulations, but finding their application to petitioner, who was convicted prior to the policy change, to be a violation of the Ex Post Facto Clause).  For the reasons set forth below, this Court

---

[6]  In one court in this district, the 2005 regulations were held to be valid.  See Jackson v. Federal Bureau of Prisons, Civ. No. 05-2339 (FLW), 2005 WL 1705775 (D.N.J. July 20, 2005); DeFrancesco v. Federal Bureau of Prisons, Civ. No. 05-1780 (FLW), 2005 WL 1712020 (D.N.J. July 20, 2005).

adopts the reasoning of those district judges that have found the new regulations to be valid.

The district courts that have invalidated the February 2005 regulations generally base their determinations on the opinion rendered in <u>Drew v. Menifee</u>, No. 04-9944, 2005 WL 525449 (S.D.N.Y. Mar. 4, 2005).  In <u>Drew</u>, the court concluded that the new regulations fail to reasonably interpret § 3621(b) "because the BOP has not exercised its discretion on the basis of the five factors set forth in Section 3621(b)."  <u>Id</u>. at *4.  The court explained:

> The principal problem with the 2-14-05 Rule is that it does not consider any of the factors that the BOP, in the words of the Senate Committee on the Judiciary, "is specifically required" to consider.  With respect to the possibility of placement in a CCC prior to the last ten per cent or six months of the prisoner's sentence, the [new] Rule simply posits a uniform rule that entirely ignores Section 3621(b)'s command.  No consideration is given to the prisoner's offense of conviction, the prisoner's history and characteristics or any of the other factors identified in the statute.

<u>Id</u>. at *4.[7]

-----

[7]  The Report of the Senate Committee on the Judiciary accompanying the enactment of § 3621(b), S.Rep. No. 98-225, reprinted in 1984 U.S.C.C.A.N. 3182,3324-25, states:

> In determining the availability or suitability of the facility selected, the Bureau *is specifically required* to consider such factors as the resources of the facility considered, the nature and circumstances of the offense, the history and characteristics of the prisoner, the statements made by the sentencing court concerning the purposes for imprisonment in a particular case, any recommendations as to type of facility made by the court, and any pertinent policy statements issued by the

However, the language of § 3621(b) itself clearly establishes that the five factors listed therein are not mandatory.  Section 3621(b) states that the BOP "shall designate the place of the prisoner's imprisonment," but it further provides that:

> The Bureau *may* designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau ... that the Bureau determines to be appropriate, considering-
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence ...
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a) of title 28.

18 U.S.C. § 3621(b)(emphasis added).  "Congress' use of the permissive 'may' to define the BOP's designation authority is

---

sentencing commission pursuant to proposed 28 U.S.C. § 994(a)(2).  *After considering these factors,* the Bureau of Prisons may designate the place of imprisonment in an appropriate type of facility, or may transfer the offender to another appropriate facility.

In the absence of unusual circumstances, Federal courts currently will not review a decision as to the place of confinement.  The Committee, by listing factors for the Bureau to consider in determining the appropriateness or suitability of any available facility, does not extend to restrict or limit the Bureau in the exercise of its existing discretion so long as the facility meets the minimum standards of health and habitability of the Bureau, but intends to set forth the appropriate factors that the Bureau should consider in making the designations.

(Emphasis added).

inconsistent with the imposition of 'discretionless obligations'." Lopez v. Davis, 531 U.S. 230, 241 (2001). Significantly, Congress used the mandatory term "shall" several times within § 3621(b) to impose discretionless obligations; for instance, in the first sentence of the statute ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment"), and in the sentence following the aforementioned five factors ("in designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status"). Lopez, supra. In contrast, the clause pertaining to the BOP's consideration of five factors in § 3621(b) is not preceded by the term "shall", but instead, employs the permissive term "may". This Court declines to read a mandatory obligation into the text of § 3621(b) with respect to the BOP's discretionary consideration of the five factors when such an interpretation would render the word "may" meaningless. See United States v. Loney, 219 F.3d 281 (3d Cir. 2000)(statutes must be interpreted to give meaning to all of their terms).

Even if the statutory language in § 3621(b) is ambiguous, which this Court does not find, the Senate Judiciary Committee Report emphasizes that the Committee's listing of factors for the BOP's consideration in determining the appropriateness of a facility for placement or transfer "does not intend to restrict

24

or limit the Bureau in the exercise of its existing discretion so long as the facility meets the minimum standards of health and habitability of the Bureau ..."  S.Rep. No. 98-225, reprinted in 1984 U.S.C.C.A.N. 3182, 3325.

Thus, this Court does not agree with the holding in Drew. Moreover, it appears that these five statutory factors were appropriately considered by the BOP when developing the new February 2005 policy.  See Proposed Rule, 69 Fed.Reg. at 51,214 ("In deciding to limit inmates' community confinement to the last ten percent of the prison sentence, not to exceed six months, the Bureau has carefully considered all of the statutorily-specified factors, as well as the additional consideration that it identified as pertinent").  Thus, any contention that the new regulations neglect the § 3621(b) factors unreasonably is not sustained by the BOP's express proposals in formulating the new policy.  See Moss, 376 F. Supp.2d at 423-24 (disagreeing with Drew v. Menifee, No. 04-9944, 2005 WL 525449 (S.D.N.Y. Mar. 4, 2005)); and Wiesel v. Menifee, 04 Civ. 9681, 2005 WL 1036297 (S.D.N.Y. May 2, 2005).  Although the new policy may limit a prisoner's access to early CCC placement, it also expressly states that the BOP will continue to take into account all five statutory factors when designating or transferring federal prisoners to correctional facilities, including CCCs.  See February 2005 Policy, 70 Fed.Reg. at 1660 ("The Bureau will

25

continue to evaluate [the factors enumerated in § 3621(b)] when making individual designations to appropriate Bureau facilities, and this rule will not adversely affect such individualized determinations").

Furthermore, there is nothing in § 3621(b) that regulates the weight that the BOP must give to each of the five statutory factors, even if § 3621(b) was interpreted to require the BOP to accord some weight to each factor.  Nothing in § 3621(b) prohibits the BOP from considering the additional factors identified as relevant in developing the February 2005 policy.  In fact, some of these new factors are specifically referenced by statute, so there is no basis to conclude that the February 2005 rule interprets § 3621(b) unreasonably.  See Proposed Rule, 69 Fed.Reg. at 51,214 (for instance, the desire to avoid favoritism in making designation decisions is referenced in § 3621(b)("There shall be no favoritism given to prisoners of high social or economic status")).  Finally, nothing in § 3621(b) requires the BOP to consider transferring any federal prisoner in its custody before the transitional point set forth in 18 U.S.C. § 3624(c).  The fact that the BOP has the authority to consider an inmate for a CCC transfer does not confer on the inmate a right to that consideration before his 10% date under 18 U.S.C. § 3624(c).  See Yip v. Federal Bureau of Prisons, 363 F. Supp.2d 548, 551-52 (S.D.N.Y. 2005); Paloian v. Scibana, No. 04-C-858-C, 2004 WL

3006559, *3 (W.D.Wis. Dec. 21, 2004).  <u>See also</u> <u>Rodriguez v.</u> <u>Federal Bureau of Prisons</u>, 05 Civ. 3934 (GEL), 2005 WL 1164154, *1 (S.D.N.Y. May 16, 2005)( the court's prior order "did not purport to establish any entitlement on the part of petitioner to any particular designation; its effect is to restore discretion to the [BOP], not to impose judicial control over a decision best left to the sound expertise of the Bureau").  Thus, this Court concludes that the February 2005 policy represents a reasonable interpretation of § 3621(b).

Finally, the Court also concludes that Congress did not express a clear intent to limit the BOP's authority to regulate its discretion under § 3621(b) by adopting categorical rules such as the February 2005 policy, even though § 3621(b) provides for individualized determinations.  <u>See</u> <u>Lopez</u>, 531 U.S. at 243-244 ("even if a statutory scheme requires individualized determinations ... the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority")(internal quotation marks omitted)(*quoting* <u>American</u> <u>Hospital Assn. V. NLRB</u>, 499 U.S. 606, 612 (1991)).

In <u>Lopez</u>, the Supreme Court rejected a challenge to the BOP's categorical rule excluding certain inmates from a discretionary early release program.  This Court finds no significant distinction between the situation in <u>Lopez</u> and the

27

issue in this case.  Here, the BOP has identified a category of
inmates – those who have not reached their 10% date for
transitional CCC placement under § 3624(c), but may be eligible
under § 3621(b) – and created a rule denying CCC transfers to all
of them.  As shown above, this categorical rule does not conflict
with an identified directive of Congress.  See Yip, 363 F.
Supp.2d at 552; Moss, 376 F. Supp.2d at 424.

    The contrary view holds that the "BOP has not exercised
categorical discretion at all, as it has rendered *all* prisoners
ineligible for transfer to a CCC aside from those that section
3624(c) requires the BOP to attempt to place in a CCC – *i.e.*,
those in the last ten percent of the term to be served."  Baker,
2005 WL 2276040 at *6 (emphasis in original)(citing Pimentel, 367
F. Supp.2d at 374).  Thus, the new regulation does not merely
"delineate the boundaries of its discretion consistent with
congressional intent," but "removes all discretion in all cases
in determining whether to transfer an inmate to a CCC at any time
prior to the last ten percent of an inmate's sentence."
Pimentel, supra.  The Pimentel court finds that the new
regulation, unlike the rule in Lopez, in no way furthers or
interprets the § 3621(b) factors.  Id. at 375.

    In Charboneau, the court found this analysis in Pimentel to
be "thoughtful, but ultimately unpersuasive" for several reasons.
2005 WL 2385862 at *5 (quoting Troy, 2005 WL 1661101 at *2).

First, as this Court discussed above, nothing in § 3621(b) shows that Congress imposed a mandatory obligation on the BOP to consider each factor in every decision to designate or transfer an inmate.  Second, the Charboneau court found that the legislative history, relied upon in Pimentel, is "ambiguous and unenlightening".  Charboneau, 2005 WL 2385862 at *5 (quoting Wiesel, 2005 WL 1036297 at *7).  Finally, as this Court again noted above, it is simply incorrect to assert that the BOP failed to consider any of the factors in § 3621(b), but even if the BOP did consider only two of the five statutory factors, there is nothing in § 3621(b) that regulates the weight to be given each factor.  Thus, because the BOP seems to have been guided by the factors set forth in § 3621(b) in formulating the February 2005 rule, there is nothing to support the argument that the BOP could not follow the categorical approach it took.  Charboneau, 2005 WL 2385862 at *6.

Therefore, this Court concludes that the February 2005 policy is a lawful exercise of the BOP's discretion under § 3621(b), and Harris' challenge to the new policy as contrary to the intent of Congress is rejected.[8]

---

[8]   The Court's determination with respect to the new regulations does not conflict with its earlier ruling in Cestaro, et al. v. DeRosa, et al., Civil No. 04-792 (RBK).  There, this Court found invalid the December 2002 BOP policy, which was based on the OLC memorandum.  Specifically, this Court rejected the OLC/BOP policy which determined that a CCC is not a penal or correctional facility that the BOP may designate as a place of

29

## CONCLUSION

Based on the foregoing, the Court finds valid the February 2005 regulations regarding the BOP's categorical discretion in CCC placement of federal prisoners at the final 10% (not to exceed six months) of the prisoner's sentence.  Accordingly, Harris' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 will be denied.  An appropriate Order accompanies this Opinion.


S/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

Dated: October 6, 2005

---

imprisonment.  Further, the Court found that the December 2002 BOP policy impermissibly limited the BOP's discretion in making placement or transfer decisions at any time during the term of imprisonment that was statutorily granted under § 3621(b). Finally, the Court held that the BOP policy was not entitled to any deference under Chevron because they were not embodied in any regulation or program statement.

The new February 2005 regulations are clearly entitled to Chevron deference.  See this Opinion, supra, at pp. 18-19. Moreover, the new rules acknowledge that the BOP has the statutory discretion to designate CCC placement or transfers to federal inmates at any time during their term of imprisonment pursuant to § 3621(b).  While acknowledging this discretionary authority, the new rules set forth a permissible categorical exercise of discretion, under 18 U.S.C. § 3621(b), for designating federal prisoners to CCCs, which, as a matter of policy, would limit an inmate's CCC placement eligibility to the last 10% of the prison sentence being served, not to exceed six months.